UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
11-cr-60260-MARRA/VITUNAC
CASE NO. _____
18 U.S.C. § 371

UNITED STATES OF AMERICA

v.

MARIE NICOLE DORVAL,

    **Defendant.**
_____/

## INFORMATION

The United States charges that:

**COUNT 1**
**(18 U.S.C. § 371)**

FILED by __RB__ D.C.

OCT 24 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

1. From in or around April 2008 through in or around July 2009, in Broward and Miami-Dade Counties in the Southern District of Florida and elsewhere, the defendant,

**MARIE NICOLE DORVAL**

did willfully and knowingly combine, conspire, confederate and agree with others to commit an offense against the United States, specifically, visa fraud by knowingly subscribing as true a false statement with respect to a material fact in any application, affidavit, and other documents required by the immigration laws or regulations prescribed thereunder, to wit, the ETA-750 Application for Alien Employment Certification and the I-129 Petition for Non-Immigrant Worker, and by knowingly presenting to a U.S. federal government agency or department any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact, in violation of Title 18, United States Code, Section 1546 (a) (paragraph 4).

## OBJECT OF THE CONSPIRACY

2. It was the object and purpose of the conspiracy for the defendant and her co-conspirator(s) to make false statements about the nature and availability of work in petitions to the federal government for certification under a guest worker program, in order to facilitate the issuance of visas to Haitian nationals who paid the defendant and her co-conspirator(s) substantial fees based on false promises of employment, housing, and other benefits in the United States.

## MANNER AND MEANS

The manner and means by which the defendant and her co-conspirator(s) sought to accomplish the object and purpose of the conspiracy included, among others, the following:

3. Co-conspirators entered into a business venture in or about April 2008, continuing through late 2009, in the Southern District of Florida and elsewhere, to bring workers from Haiti to the United States under the federal H-2B temporary non-agricultural guest worker program.

4. Co-conspirators recruited 145 Haitian nationals to come to the United States to perform construction and construction-site cleaning work by enticing them with false promises of high steady wages and free room and board for ten months, the ability to return to the United States multiple times thereafter, and the possibility of securing permanent residency.

5. Co-conspirators entered into a sham contract to provide a Florida contractor with 150 construction workers, never intending that contract to be binding and knowing that the contractor had no intention to employ those workers.

6. Co-conspirators submitted fraudulent applications to the federal government for certification under the H-2B program, representing that the Haitian nationals were needed for construction work under the contract. The certification process functions as follows:

a. The U.S. Department of Labor ("DOL") is responsible for regulating and enforcing the provisions of 20 C.F.R. Part 655, Subpart A, which governs the labor certification process for temporary employment of aliens in the United States under the H-2B classification and requires that the Certifying Officer of the Employment and Training Administration ("ETA") issue temporary labor certifications on behalf of the Secretary of Labor. DOL adjudicates all petitions for temporary foreign workers to fulfill temporary or seasonal non-agricultural jobs that could not be filled by U.S. citizens.

b. U.S. Citizenship and Immigration Service ("USCIS"), within the Department of Homeland Security, is responsible for processing certain petitions and applications for visas permitting aliens to enter the United States, including the H-2B temporary and seasonal non-agricultural worker visa.

c. Under U.S. laws and regulations, the H-2B visa permits aliens to perform non-agricultural work in the United States for a specified, temporary period of time. An employer seeking to employ temporary foreign employees is required to follow applicable procedures with at least four government entities: a state labor agency, DOL, USCIS, and the U.S. Department of State. The state workforce agency in Florida is the Agency for Workforce Innovation ("AWI").

d. A prospective employer is required to file a DOL Application for Alien Employment Certification ("ETA-750") with the state labor agency, in this instance, AWI. The application specifies, *inter alia*, the employer name, address, location, dates, rate of pay, and description of the employment, under penalty of perjury. The state labor agency reviews the ETA-750, and then forwards it to DOL for consideration and certification.

e. If DOL approves the ETA-750, DOL issues the certified ETA-750 with an

3

original stamped certification and a "Final Determination Letter," indicating that the request for temporary foreign workers has been certified based upon the ETA-750 and its supporting documentation.

      f.      After DOL issues a certified ETA-750, the employer must submit the original ETA-750, along with a Petition for Non-Immigrant Worker ("I-129") to USCIS. The I-129 petition is signed under penalty of perjury and specifies the nature, location, terms, and requirements of the specific job to be filled. USCIS approves a specified number of H-2B temporary or seasonal foreign worker positions. USCIS generates a Notice of Action ("I-797") and a copy is sent to the employer and the appropriate U.S. Embassy.

      g.      Aliens seeking to enter the United States as H-2B temporary or seasonal workers are required to complete an Application for a Non-immigrant Visa ("DS-156"). They must submit the DS-156 form to the U.S. Embassy or U.S. Consulate in the country from which they are applying.

      h.      When the appropriate U.S. Embassy or Consulate receives the approved I-797 from USCIS, the Department of State may issue H-2B visas to qualified aliens.

      i.      When an alien receives an H-2B visa, the alien is permitted to apply for entry into the United States but must work only for the petitioning employer in the specific job designated in the forms described above.

7.      Co-conspirators intended to put the Haitian nationals to work in jobs other than those specified on the forms submitted to DOL, if such jobs became available.

8.      Co-conspirators transported 145 Haitian nationals to the United States, did not provide them with the employment specified in the ETA-750, did not pay them the promised wages,

4

and did not provide them with free and adequate housing and food. These actions left the Haitian nationals unable to repay debts they had incurred to pay their up-front fees and in desperate living circumstances.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, at least one of the co-conspirators committed or caused to be committed at least one of the following overt acts, among others, in the Southern District of Florida and elsewhere:

9. In or about April 2008, the defendant and her friend J.M. met with an immigration attorney, J.N., to learn more about the government's H-2A and H-2B temporary visa programs and subsequently started a staffing company, which became Manidor Financial Group, Inc. ("Manidor"), to bring workers from Haiti to the United States.

10. In or about May 2008, the defendant filed an H-2A application for fifty temporary agricultural workers with DOL, which was denied because she was not a licensed farm contractor.

11. In or about May 2008, the defendant then filed an H-2B application for 150 temporary workers, which J.N. advised her required a contract with a construction company.

12. In or about April or May 2008, J.M. introduced the defendant to T.R., owner of a construction company in Florida for purposes of securing a contract to complete the H-2B application process.

13. On or about May 30, 2008, the defendant and J.M. met T.R. at T.R.'s home where T.R. signed a letter of intent to hire workers through Manidor, but the defendant and T.R. orally agreed that neither party actually intended for T.R. to commit to hiring 150 workers and that T.R. would contact the defendant if and when he needed any workers.

14. In or about May 2008, without first securing jobs for the workers, the defendant submitted to AWI an Application for Alien Employment Certification, Form ETA-750, which contained statements she knew to be false or misleading, including the letter of intent signed by T.R., the statement that Haitian nationals would work in construction in Broward and Miami-Dade Counties, that they would work 40 hours per week at an hourly wage of $8.42, that their employment would run from October 1, 2008 to August 1, 2009, and that she had sufficient funds to pay their wages.

15. In response to a deficiency letter from DOL, dated July 17, 2008, requiring further evidence that Manidor's need for workers was temporary and a copy of the labor contract between Manidor and its client, the defendant again met with T.R. on or about July 21, 2008; she explained to T.R. her need to satisfy DOL and had T.R. sign a contract requiring Manidor to provide his construction company with 150 construction workers for the period of October 1, 2008 to August 1, 2009.

16. On or about July 23, 2008, the defendant sent a copy of the contract signed by T.R. to DOL, along with a statement of temporary need discussing the contract, which led to DOL approving and certifying the defendant's application on September 16, 2008.

17. On or about October 3, 2008, the defendant submitted to USCIS an I-129 petition for non-immigrant workers, seeking authorization for 145 H-2B foreign workers to enter the United States.

18. Between June 2008 and November 2008, the defendant used at least four recruiters in Haiti, P.M., M.J., E.V., and another person with first initial "M"; these recruiters charged the Haitian nationals substantial fees, paying $1,850 from each worker's fee to the defendant and

6

keeping the remainder for themselves.

19. On or about July 15, 2008, the defendant traveled to Haiti where she personally recruited workers by telling them they would be working in construction and on farms, that their housing and food would be free if they worked on a farm, and that they could return to the United States three times using their visas and possibly obtain green cards thereafter (even though extensions of H-2B visas cannot be guaranteed and permanent residency is not part of the program).

20. On or about November 15, 2008, the defendant traveled to Haiti where she personally recruited workers by telling them they would be working in construction and on farms, that their housing and food would be free if they worked on a farm, and that they could return to the United States three times using their visas and possibly obtain green cards thereafter.

21. A third time between June 2008 and November 2008, the defendant traveled to Haiti where she personally recruited workers by telling them they would be working in construction and on farms, that their housing and food would be free if they worked on a farm, and that they could return to the United States three times using their visas and possibly obtain green cards thereafter.

22. Between 2008 and 2009, J.M. went to the U.S. embassy in Haiti to assist the recruited workers in obtaining visas.

23. On or about April 2, 2009, the defendant traveled to Haiti and then flew with a group of recruited workers to the United States, escorting them through customs and border security.

24. On or about April 8, 2009, the defendant traveled to Haiti and then flew with a group of recruited workers to the United States, escorting them through customs and border security.

25. On or about April 12, 2009, the defendant traveled to Haiti and then flew with a group of recruited workers to the United States, escorting them through customs and border security.

7

26. When the workers arrived in the United States, the defendant and her co-conspirator(s) did not provide them with work or housing as promised; instead, co-conspirator(s) told the workers to make their own housing arrangements, and months passed before any of the Haitian nationals were offered any work at all.

27. In or about July 2009, the defendant entered into an arrangement with two farm labor contractors, E.S. and I.L., under which some of the workers were transported to Gainesville, Florida, to work on farms—contrary to representations made in the defendant's guest worker application submitted to DOL—where they lived in trailers with filthy carpets, no beds, and no electricity.

28. In or about July 2009, the defendant also permitted some of the workers to be transported to South Carolina to work on a farm, contrary to the H-2B guest worker program, and contrary to representations made in the defendant's guest worker application submitted to DOL.

All in violation of Title 18, United States Code, Sections 371 and 1546.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **MARIE NICOLE DORVAL**, has an interest.

2. Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1546, as alleged in this Information, the defendant shall forfeit all of her right, title and interest to the United States in the following property, pursuant to Title 18, United States Code, Section 982(a)(6):

(a) any conveyance, including any vessel, vehicle, or aircraft used in the commission of such violation; and

(b) any property, real or personal –

(1) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of such violation; or

(2) that was used to facilitate, or was intended to be used to facilitate, the commission of such violation.

All pursuant to Title 18, United States Code, Section 982(a)(6), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

*Thomas J. Mulvihill for*
WIFREDO A. FERRER
UNITED STATES ATTORNEY

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By: *William T. Shockley for*
ROY CONN
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice

By: *William T. Shockley for*
CHIRAAG BAINS
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

Marie Nicole Dorval,

        **Defendant.**
_____/

CASE NO. _____

# CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

___ Miami    ___ Key West
✓ FTL    ___ WPB    ___ FTP

New Defendant(s)    Yes ___    No ___
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    No
   List language and/or dialect

4. This case will take    0    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | ✓ | Petty | ___ |
   | II | 6 to 10 days | ___ | Minor | ___ |
   | III | 11 to 20 days | ___ | Misdem. | ___ |
   | IV | 21 to 60 days | ___ | Felony | ✓ |
   | V | 61 days and over | | | |

6. Has this case been previously filed in this District Court? (Yes or No)    No
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes    ✓ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes    ✓ No

                                     _William T. Shockley for_
                                     Chiraag Bains
                                     Trial Attorney
*Penalty Sheet(s) attached             Civil Rights Division, Criminal Section
                                     U.S. Department of Justice

REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Marie Nicole Dorval

**Case No:** _____

**Count #: 1**

Conspiracy to commit visa fraud

18 U.S.C. § 371

**\* Max.Penalty:** 5 years' imprisonment

Count #: 2



**\*Max. Penalty:**

Count #: 3



**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| Marie Nicole Dorval | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*