1                UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60260-CR-MARRA

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                      Case No. 11-60260-CR-MARRA
 3
    UNITED STATES OF AMERICA,      )
 4                                 )
         GOVERNMENT,               )
 5                                 )
         -v-                       )
 6                                 )
    MARIE NICOLE DORVAL,           )
 7                                 )
         DEFENDANT.                )    West Palm Beach, Florida
 8                                 )    October 28, 2011
    _____)
 9


10            TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

11            BEFORE THE HONORABLE KENNETH A. MARRA

12                 UNITED STATES DISTRICT JUDGE

13


14    Appearances:

15    FOR THE GOVERNMENT          Chiraag Bains, ESQ.
                                  U.S. Department of Justice
16                                Criminal Section
                                  Civil Rights Division
17                                601 D Street, Northwest
                                  Washington, DC 20004
18
      FOR THE DEFENDANT          Martin L. Roth, ESQ.
19                                Martin L. Roth, P.A.
                                  101 Tower
20                                101 Northeast Third Avenue
                                  Suite 1430
21                                Fort Lauderdale, FL 33301

22    Reporter                    Stephen W. Franklin, RMR, CRR, CPE
      (561)514-3768               Official Court Reporter
23                                701 Clematis Street
                                  West Palm Beach, Florida  33401
24                                E-mail:  SFranklinUSDC@aol.com

25
```

```
 1              (Call to the order of the Court.)

 2              THE COURT:  Good afternoon, please be seated.

 3              All right.  This is the case of the United States of

 4    America versus Marie Nicole Dorval, Case

 5    Number 11-60260-CR-MARRA.

 6              May I have counsel state their appearances, please.

 7              MR. BAINS:  Yes.  Chiraag Bains, on behalf of the

 8    United States.

 9              THE COURT:  Good afternoon.

10              MR. ROTH:  Good afternoon, Your Honor.  Martin Roth.

11    I represent Marie Dorval.

12              THE COURT:  We are here for a change of plea.  May I

13    have Ms. Dorval approach the lectern, please.

14              MR. ROTH:  Yes, Your Honor.

15              THE COURTROOM DEPUTY:  Please raise your right hand.

16                Marie Nicole Dorval, Defendant, sworn.

17              THE COURTROOM DEPUTY:  Please state your name for the

18    record.

19              THE DEFENDANT:  Marie Dorval.

20                              Examination

21    BY THE COURT:

22    Q   Ms. Dorval, do you understand you are now under oath, and

23    if you make any false statements to me during our discussion

24    this morning -- this afternoon, those false statements could

25    be later used against you in a prosecution for perjury or
```

```
 1    making a false statement?

 2    A    Yes.

 3    Q    How old are you?

 4    A    Forty-one.

 5    Q    Have you taken any drugs, medicine or alcohol that might

 6    affect your ability to understand today's proceedings or

 7    affect your ability to make a knowing and intelligent decision

 8    regarding this case?

 9    A    No.

10    Q    Can you read and write English?

11    A    Yes.

12    Q    Have you ever been treated for or suffered from any type

13    of mental disease or illness?

14    A    No.

15    Q    Have you ever been treated for or suffered from any type

16    of drug or chemical addictions?

17    A    No.

18    Q    How much education have you had?

19    A    College in Haiti.

20    Q    All right.  Ma'am, have you seen the document that's

21    called an information that was filed by the United States

22    against you in this case which charges or alleges that you

23    engaged in some criminal conduct?  Have you seen that

24    document?

25    A    Yes.
```

```
 1    Q    And were you able to read that document yourself?

 2    A    Yes.

 3    Q    And after you read it, were you able to discuss it fully

 4    and completely with your attorney?

 5    A    Yes.

 6    Q    And after you read the information and discussed it with

 7    your attorney, did you have a full and complete understanding

 8    of the charges that have been brought against you in this

 9    case?

10    A    Yes.

11    Q    Did you discuss with your attorney the evidence that the

12    United States has gathered and intends to present against you

13    if this case were to proceed to a trial?

14    A    Yes.

15    Q    Did you discuss with your attorney any defenses that you

16    might have to the charge?

17    A    Yes.

18    Q    Do you believe your attorney has done everything he could

19    to defend you in this case?

20    A    Yes.

21    Q    Is there anything your attorney has not done that you

22    believe he should have done in order to defend you in this

23    case?

24    A    No, he did everything.

25    Q    Are you satisfied you have received competent
```

1    representation from your attorney in this case?

2    A    Yes.

3             THE COURT:  Was there a signed waiver of indictment

4    in this case?

5             MR. ROTH:  Yes, Your Honor, we filed it in magistrate

6    court this morning.

7             THE COURT:  All right.

8    BY THE COURT:

9    Q    Now, ma'am, do you understand that you had the right under

10   the United States Constitution to require the United States

11   before it could proceed with the charge in this case against

12   you to have the Government go before a grand jury and present

13   evidence to the grand jury and have the grand jury decide

14   whether there was sufficient evidence to justify this charge

15   being prosecuted?

16   A    Yes.

17   Q    And it's my understanding that this morning before one of

18   the magistrate judges you signed a document that indicated

19   your agreement to waive or give up your right to a grand jury

20   indictment in this case; am I correct?

21   A    Yes.

22   Q    And you did sign that document?

23   A    Yes.

24   Q    And before you signed that waiver of an indictment in this

25   case, did you discuss your right to have the Government get an

```
 1   indictment before a grand jury or from a grand jury with your

 2   attorney?

 3   A    Yes.

 4   Q    And did you understand that right?

 5   A    Yes.

 6   Q    And did you agree to give up that right to a grand jury

 7   indictment freely and voluntarily?

 8   A    Yes.

 9   Q    Did anyone force you or threaten you in any way to give up

10   that right?

11   A    No.

12   Q    Now, ma'am, it's my understanding that you and the United

13   States have reached an agreement between yourselves as to how

14   you believe this case should be resolved, and I've been handed

15   a document that I'm holding entitled a "Plea Agreement."

16         Have you seen this document?

17   A    Yes.

18   Q    Did you read it?

19   A    Yes.

20   Q    And after you read it, did you discuss it fully and

21   completely with your attorney?

22   A    Yes.

23   Q    After you read the agreement and discussed it with your

24   attorney, did you have a full and complete understanding of

25   everything that's contained in this plea agreement?
```

```
 1    A    Yes.

 2    Q    And after you read the plea agreement, discussed it with

 3    your attorney and understood it, did you sign this plea

 4    agreement on the last page on that bottom signature line?  Is

 5    that your signature?

 6    A    Yes.

 7    Q    Did you sign this plea agreement freely and voluntarily?

 8    A    Yes.

 9    Q    Did anyone force you or threaten you in any way to sign

10    this plea agreement?

11    A    No.

12    Q    Did anyone force you or threaten you in any way to come

13    here today to change your plea from not guilty to guilty?

14    A    No.

15    Q    You're doing this freely and voluntarily?

16    A    Yes.

17    Q    Now, ma'am, according to the plea agreement, you are going

18    to plead guilty to count 1 of the information, and that count

19    charges you with conspiring with others to commit visa fraud,

20    in violation of Title 18 of the United States Code, Sections

21    371 and Section 1546(a).  Do you understand that's the charge

22    to which you are pleading guilty?

23    A    Yes.

24    Q    Now, ma'am, do you understand by pleading guilty to this

25    charge, that the maximum term of imprisonment that can be
```

1    imposed upon you is five years in prison?

2    A    Yes.

3    Q    And do you also understand, ma'am, that in addition to any

4    term of imprisonment that can be imposed upon you, you could

5    be placed on supervised release for up to three years?

6    A    Yes.

7    Q    And do you understand if you are placed on supervised

8    release, you would be required to follow and abide by certain

9    rules, regulations and conditions imposed by the Court?

10   A    Yes.

11   Q    Do you understand that if you fail to comply with the

12   terms of your supervised release, you could be sent back to

13   prison for an additional period of time?

14   A    Yes.

15   Q    Do you understand that in addition to any term of

16   imprisonment or term of supervised release, you could be fined

17   in this case up to $250,000?

18   A    Yes.

19   Q    And do you also understand you could be ordered to pay

20   restitution to reimburse anyone or any entity that may have

21   suffered a loss as a result of your conduct?

22   A    Yes.

23   Q    Do you understand that by pleading guilty to this one

24   count in the information, a special assessment of $100 would

25   be imposed upon you at the time of sentencing?

1   A   Yes.

2   Q   Now, ma'am, do you understand in order for me to determine

3   an appropriate sentence to impose upon you in this case, I am

4   required to consider as one of the factors what the Federal

5   Sentencing Guidelines call for as what we describe an advisory

6   guideline sentence?

7   A   Yes.

8   Q   Do you understand as I sit here today, I cannot tell you

9   definitively today what the correct guideline sentencing range

10  would be for your case because I do not have all the

11  information I need to make that determination?

12  A   Yes.

13  Q   Do you understand in order for me to get the information I

14  need to determine the correct guideline sentencing range for

15  your case and to determine an appropriate sentence to impose

16  upon you, I am going to order the probation office to prepare

17  what's called a presentence investigation report?

18  A   Yes.

19  Q   Do you understand the probation office will investigate

20  this case for me, and they will provide me with a detailed

21  report which will outline all the facts of the case, it will

22  outline for me your role or involvement in this case as

23  compared to the others that were involved, it will provide me

24  with information about your background, including any criminal

25  history that you might have, and then based upon the

1    information that the probation officer provides to me, the

2    probation officer will make a recommendation as to what he or

3    she believes the correct advisory guideline sentencing range

4    is for your case?

5    A    Yes.

6    Q    Do you understand that after the presentence report is

7    prepared, you and your attorney will have an opportunity to

8    review that report, and you will be able to file objections to

9    anything in the report that you believe is either factually or

10   legally incorrect?

11   A    Yes.

12   Q    Do you understand the United States will have the same

13   right to review the report and file objections to anything it

14   believes is incorrect?

15   A    Yes.

16   Q    Do you understand that after the report is prepared and

17   any objections are filed, we then will have a sentencing

18   hearing, at which time you and your attorney will have the

19   opportunity to present to me any evidence or argument in

20   support of your position regarding the advisory guideline

21   sentencing range if you disagree with the probation officer's

22   conclusions?  You will also be able to present me any evidence

23   or argument in support of the sentence you believe I should

24   impose upon you in this case.  The United States will have the

25   same right to present evidence and argument in support of its

1    position regarding the Sentencing Guidelines and its position

2    regarding the sentence it believes I should impose upon you in

3    this case.  And then after I've heard everything and reviewed

4    everything, I will then decide what the correct guideline

5    sentencing range is for your case, and then I will decide what

6    the actual sentence will be.  Do you understand that's the

7    procedure we will follow?

8    A    Yes.

9    Q    So do you understand until we go through that entire

10   procedure and I actually make decisions at the time of

11   sentencing, no one knows for sure what the correct guideline

12   sentencing range will turn out to be, and no one knows for

13   sure what the actual sentence will turn out to be?

14   A    Yes.

15   Q    So even though your attorney may have advised you based

16   upon his understanding of the facts of the case and his

17   understanding of the law and the Sentencing Guidelines what he

18   thinks or believes in his best professional opinion the

19   advisory guideline sentencing range will turn out to be, or

20   what he thinks or believes the actual sentence may turn out to

21   be, and even though you and the United States may have agreed

22   in your plea agreement to certain matters relating to the

23   calculation of the guidelines, my decisions may be different

24   from what your attorney has advised you, or they may be

25   different from what you and the Government have agreed to in

1  your plea agreement; do you understand that?

2  A   Yes.

3  Q   Do you understand that any recommendations that the United

4  States makes to me regarding sentencing in this case, whether

5  they're in your plea agreement or whether they're made at the

6  time of the sentencing, they are only recommendations, and I'm

7  not required to follow the recommendations of the United

8  States if I don't agree with them?

9  A   Yes.

10  Q   Do you understand that if you do not agree with the

11  sentence I impose upon you in this case, your disagreement

12  will not be a basis for you later to change your decision

13  regarding your plea of guilty?

14  A   Yes.

15  Q   Do you understand if I do not follow any of the

16  Government's recommendations regarding sentencing in this

17  case, that also will not be a basis for you later to change

18  your decision regarding your plea of guilty?

19  A   Yes.

20  Q   Do you understand that if you are given a prison sentence

21  in this case, that parole has been abolished, and you would

22  not be released from prison on parole?

23  A   Yes.

24  Q   Do you understand that the Sentencing Guidelines that I

25  was discussing with you are advisory only, they are not

1    binding or mandatory, and therefore I can sentence you above,

2    or in excess of what the Sentencing Guidelines call for, or

3    below, or less than what the Sentencing Guidelines call for?

4    A    Yes.

5    Q    So as a result, do you understand there is a potential you

6    could be sentenced to the maximum permitted by law?

7    A    Yes.

8    Q    Has anyone made any promises or representations to you as

9    to what sentence I will impose upon you in this case?

10   A    Yes.

11   Q    Listen to my question again and think about it before you

12   answer.

13        Has anyone made any promises or representations to

14   you as to what sentence I will impose upon you in this case?

15   A    No.

16   Q    Are you sure about that?

17   A    Yes.

18   Q    Has anyone made any promises or representations to you

19   other than what's in this plea agreement that you signed?

20   A    No.

21   Q    Has anyone made any promises or representations to you

22   other than what's in this plea agreement in order to convince

23   you to plead guilty in this case?

24   A    No.

25   Q    Now, ma'am, according to the plea agreement, because you

```
 1   have accepted responsibility for your actions in this case and
 2   have agreed to plead guilty, the United States has agreed to
 3   recommend to me that when I calculate your guideline
 4   sentencing range, you should receive a three-level reduction
 5   in the offense level under the Sentencing Guidelines.  Do you
 6   understand that's part of your plea agreement?
 7   A   Yes.
 8   Q   Do you also understand that the United States has agreed
 9   to recommend to me that I sentence you at the low end of the
10   guideline sentencing range that I determine's appropriate for
11   your case?
12   A   Yes.
13   Q   Now, ma'am, do you understand that in order to get the
14   benefit of these two recommendations that the United States
15   has agreed to make to me, there are three things set forth in
16   paragraph 8 of your plea agreement that you must comply with,
17   and if you do not comply with all three of those requirements
18   set forth in paragraph 8, then the United States would not be
19   obligated to make those two recommendations to me?  Do you
20   understand that?
21   A   Yes.
22   Q   Do you also understand that even if the United States
23   makes those recommendations to me, I'm not obligated to follow
24   them if I don't believe they are appropriate?
25   A   Yes.
```

1    Q    Do you also understand that both you and the United States

2    have agreed between yourselves as to certain guideline

3    calculations for purposes of this case, and those agreements

4    are set forth in paragraph 9 of your plea agreement?  Do you

5    understand that?

6    A    Yes.

7    Q    And do you understand you and the United States have

8    agreed that when I calculate the guideline sentencing range,

9    that the base offense level for the offense to which you're

10   pleading guilty is a level -- a level 11?  Do you understand

11   that?

12   A    Yes.

13   Q    And you understand that you and the United States have

14   agreed that because the amount of documents, fraudulent or

15   false documents in which you were involved was more than 100

16   separate documents, then your offense level should be

17   increased by an additional nine levels?

18   A    Yes.

19   Q    And do you understand that because, again, you are

20   accepting responsibility, the United States has agreed to

21   recommend that your offense level be reduced by an additional

22   three levels?

23   A    Yes.

24   Q    So do you understand that you and the United States have

25   agreed between yourselves that the guideline range in this

```
 1    case should be a level 17?
 2    A    Yes.
 3    Q    And assuming your criminal history category is a criminal
 4    history category of one, which is the lowest criminal history
 5    category under the Sentencing Guidelines, if that were the
 6    case, then your offense level advisory guideline -- excuse me,
 7    sentencing range would be between 24 months at the low end and
 8    30 months at the high end?
 9    A    Yes.
10    Q    And did you understand or do you understand that as part
11    of your plea agreement, you and the United States have agreed
12    that I should sentence you within the guideline sentencing
13    range unless I grant you a reduction for providing substantial
14    assistance?  Do you understand that?
15    A    Yes.
16    Q    Now, ma'am, do you understand that as to the guideline
17    calculations that you and the Government have agreed to, I'm
18    not bound by that decision or that agreement, and if I'm
19    convinced that some or all of these agreements are incorrect,
20    I can come to a different conclusion?  Do you understand that?
21    A    Yes.
22    Q    Now, ma'am, do you also understand that you have agreed to
23    cooperate with the United States regarding its investigation
24    of this case and any other matters about which you might have
25    some knowledge, and in exchange for your agreement to
```

```
 1    cooperate with the United States, the United States has agreed
 2    to evaluate the nature and the extent of the cooperation you
 3    provide to it, and the United States has agreed to evaluate
 4    and to determine whether, in its judgment, the cooperation you
 5    provide either up to now or in the future rises to the level
 6    of what's called substantial assistance?  Do you understand
 7    that the Government -- you've agreed to provide that
 8    cooperation, and the Government's agreed to evaluate that
 9    cooperation?
10    A   Yes.
11    Q   And do you understand, ma'am, that it's entirely up to the
12    United States to evaluate your cooperation and decide whether
13    it does or does not meet this standard of substantial
14    assistance?  I have no involvement in making that decision.
15    A   Yes.
16    Q   And do you understand it's entirely up to the United
17    States to decide whether to file a motion with the Court
18    asking me to sentence you below the guideline sentencing range
19    because of the assistance you provided the Government?
20    A   Yes.
21    Q   And do you understand, once again, I have no involvement
22    in making the decision whether the Government should or should
23    not file a motion with the Court asking me to reduce your
24    sentence because of the cooperation you provide?
25    A   Yes.
```

```
 1    Q   And do you also understand that even if the United States

 2    believes you have provided substantial assistance and they do

 3    file a motion with the Court asking me to reduce your

 4    sentence, I'm not required to grant that motion if I don't

 5    believe it's appropriate?

 6    A   Yes.

 7    Q   Do you also understand, ma'am, that as part of your plea

 8    agreement, you have greed to cooperate with the United States

 9    regarding forfeiture of any property that was either gained or

10    obtained by you through the criminal activity in which you

11    were involved?

12    A   Yes.

13    Q   And do you understand that -- I'm not sure if I asked you

14    this question or not, and if I did I apologize for repeating

15    myself, but do you understand that both you and the United

16    States have agreed that, again, unless you provide substantial

17    assistance to the United States and the United States files a

18    motion with the Court asking me to reduce your sentence

19    because of that assistance, unless that happens, you and the

20    United States have agreed that you should be sentenced within

21    the guideline range that I determine is appropriate in your

22    case?

23    A   Yes.

24    Q   And, again, do you understand I'm not bound to go along

25    with the Government on your agreement on that aspect of the
```

```
1    sentencing if I don't believe it's appropriate?
2    A    Yes.
3    Q    Do you also understand for purposes of calculating the
4    advisory guideline sentencing range in this case, you have
5    agreed with the United States that I can consider any relevant
6    conduct in calculating the guideline range, even if the
7    conduct is not the subject of the offenses which you are
8    pleading guilty?
9    A    Yes.
10   Q    And do you understand that you have agreed with the United
11   States that you would cooperate with the United States and
12   assist the United States in any attempts to recover what was
13   either obtained through the course of your criminal conduct or
14   was used during the course of your criminal conduct?
15   A    Yes.
16              THE COURT:  If you need to confer with your client,
17   go ahead.
18              MR. ROTH:  Thank you, Judge.  We're ready to proceed.
19              THE COURT:  All right.  Thank you.
20   BY THE COURT:
21   Q    Ma'am, do you also understand that ordinarily when someone
22   is sentenced by the Court, the person who is sentenced has the
23   right to take an appeal and challenge the sentence before a
24   higher court?
25   A    Yes.
```

```
 1    Q   Do you understand as part of your plea agreement, you have
 2    agreed to give up or waive your right to appeal the sentence
 3    in this case unless I sentence you in excess or above what the
 4    law permits, unless I sentence you in excess or above what the
 5    advisory guideline range calls for, or unless the United
 6    States decides to appeal the sentence?
 7    A   Yes.
 8    Q   Now, ma'am, did you understand your right to appeal the
 9    sentence in this case when you signed your plea agreement?
10    A   Yes.
11    Q   Did you discuss that right with your attorney before you
12    signed your plea agreement?
13    A   Yes.
14    Q   Did you give up your right to appeal the sentence in this
15    case freely and voluntarily?
16    A   Yes.
17    Q   Did anyone force you or threaten you to give up that
18    right?
19    A   No.
20    Q   Do you also understand, ma'am, that you have agreed with
21    the United States that if you breach the plea agreement to
22    which you have entered into or actually fail to go forward and
23    enter the plea or withdraw the guilty plea, then the United
24    States can use any statements that you have provided to it or
25    have made against you in any future criminal prosecution?  Do
```

1    you understand that?

2    A    Yes.

3    Q    And do you understand you've agreed to waive any

4    protection of the Rules of Evidence or any other provisions of

5    the law which would not -- which would otherwise prevent the

6    United States from using those statements against you in any

7    trial?

8    A    Yes.

9    Q    And do you understand that you have agreed to waive any

10   applicable statute of limitations for any charges filed

11   against you as a result of you breaching the plea agreement?

12   A    Yes.

13   Q    Now, ma'am, do you understand you have the right to

14   continue to plead not guilty in this case, and you have the

15   right to have this case tried before a jury?

16   A    Yes.

17   Q    Do you understand if you had a jury trial, you would have

18   the right to be represented by an attorney throughout the

19   trial, and if you could not afford an attorney, one would be

20   appointed to represent you?

21   A    Yes.

22   Q    Do you understand if you had a jury trial, you would be

23   presumed innocent of the charge or charges that the United

24   States has brought against you, and the United States would be

25   required to prove your guilt to the jury beyond a reasonable

```
1    doubt?

2    A    Yes.

3    Q    Do you understand if you had a jury trial, you would have

4    the right to confront the witnesses the United States calls

5    against you, you would have the right to have those witnesses

6    cross-examined in your presence, and you'd be able to

7    challenge all of the evidence the United States presented

8    against you during the case?

9    A    Yes.

10   Q    Do you understand if you had a jury trial, you would have

11   the right if you chose to exercise it to testify in your own

12   defense, you would have the right to present other evidence

13   and witnesses in your defense, and you would have the ability

14   to subpoena witnesses to compel them to come in and testify in

15   your defense?

16   A    Yes.

17   Q    Do you understand if you had a jury trial, you would have

18   the right not to testify or present evidence against yourself

19   if you chose not to?

20   A    Yes.

21   Q    Do you understand if you chose not to testify, the United

22   States could not use that decision against you and argue to

23   the jury that because you did not testify the jury should find

24   you guilty?

25   A    Yes, I understand.
```

1    Q   And do you understand if you had a jury trial and the jury

2    found you guilty, you would have the right to take an appeal

3    and challenge the conviction before a higher court?

4    A   Yes.

5    Q   Do you understand by pleading guilty in this case, you

6    will give up your right to a jury trial and all the rights

7    that are an aspect of a jury trial that we just discussed?

8    A   Yes.

9    Q   Do you also understand by pleading guilty in this case,

10    you will be adjudicated guilty of a felony offense, and as a

11    result you could be deprived of valuable civil rights, such as

12    the right to vote, the right to hold public office, the right

13    to serve on a jury and the right to possess any type of

14    firearm?

15    A   Yes.

16    Q   Do you understand if you are not a United States citizen,

17    by pleading guilty in this case you could be deported from

18    this country and not permitted to return?

19    A   Yes.

20    Q   Now, ma'am, included in the plea agreement that we talked

21    about earlier, starting at what's labeled paragraph 2,

22    subparagraph A through subparagraph letter O, there are facts

23    that are set forth in those particular paragraphs that support

24    the charge against you to which you are pleading guilty and

25    would support your plea of guilty to this charge.  Do you see

1    those facts?

2    A    Yes.

3    Q    And do you agree that those facts in the document,

4    paragraph 2A through O, which is contained on pages 1 through

5    4, do you agree that those facts are all true and correct?

6    A    Yes.

7    Q    And do you agree that those facts support the charge

8    against you to which you are pleading guilty?

9    A    Yes.

10   Q    And, ma'am, did you agree after reading those facts -- and

11   you discussed those facts with your attorney, correct?

12   A    Yes.

13   Q    And did you sign the plea agreement --

14   A    Yes.

15   Q    -- in part based upon the fact that you agree all of those

16   facts in paragraph 2A through O are true and correct?

17   A    Yes.

18   Q    And based upon the facts contained in paragraph 2A through

19   2O of the plea agreement, how do you plead to count 1 of the

20   information, guilty or not guilty?

21   A    I'm guilty.

22        THE COURT:  Is there anything else I need to cover

23   with the Defendant before I accept his (sic) plea?

24        MR. BAINS:  Court's indulgence.

25        No, Your Honor.

```
 1             THE COURT:  Anything from the defense?

 2             MR. ROTH:  No, Your Honor.

 3             THE COURT:  All right.  In the case of the United

 4    States of America versus Marie Nicole Dorval, it is the

 5    finding of the Court that the Defendant is fully competent and

 6    capable of entering an informed plea, that she is aware of the

 7    nature of the charge and the consequences of her plea, that

 8    her plea of guilty is a knowing and voluntary plea, supported

 9    by an independent basis in fact containing each of the

10    essential elements of the offense.  The Court also finds that

11    the Defendant has made a knowing, intelligent and voluntary

12    waiver of her right to appeal the sentence in this case.

13             The plea is therefore accepted, and the Defendant is

14    now adjudged guilty of count 1 of the information.

15             Now, ma'am, as I mentioned, I'm going to order the

16    probation office to prepare the presentence investigation

17    report.  You have a right, if you choose to, to participate in

18    the preparation of that report.  If you wish to meet with the

19    probation officer who prepares your report, your attorney may

20    be present with you at that time.  And once the report is

21    prepared, as we discussed earlier, you will have the right to

22    review that report with your attorney and file objections, as

23    will the United States.  And we will discuss the report and

24    any objections at the time of sentencing, which I am going to

25    schedule for Friday, February 3rd, 2012, at 1:30 p.m., here in
```

1    West Palm Beach.

2           All right.  Is the Defendant going to remain on bond

3    pending sentencing?  Does the Government have any objection?

4           MR. BAINS:  No objection to that, Your Honor.

5           THE COURT:  All right.  Ma'am, you're going to remain

6    on bond on the same conditions as you have been since you were

7    released from custody, and we will see you in February.

8           Thank you.

9       (Proceedings concluded.)

10                    * * * * *

```
 1                          * * * * *

 2                        I N D E X

 3   Testimony of Marie Nicole Dorval

 4          Examination by the Court            2

 5                          * * * * *

 6                        E X H I B I T S

 7   (None.)

 8                          * * * * *

 9                        CERTIFICATE

10       I, Stephen W. Franklin, Registered Merit Reporter, and

11   Certified Realtime Reporter, certify that the foregoing is a

12   correct transcript from the record of proceedings in the

13   above-entitled matter.

14       Dated this 3rd day of DECEMBER, 2013.

15

16       /s/Stephen W. Franklin
         _____
17       Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```